In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

Sharon ALLEN, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

May 16, 1995.

Sharon Allen, Seattle, Washington, pro se.

Melody G. Foster, Richmond, Virginia, for
Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge.

Dalkon Shield Claimant Sharon Allen
("Movant"), who appeared *pro se* before the
Court on May 12, 1995,[1] seeks relief from the
Dalkon Shield Claimant Trust's ("Trust") fi-
nal June 30, 1994, deadline to file a Dalkon
Shield claim. For the reasons which follow,
her request will be denied.

### I.

In mid-April, 1994, the Trust published, in
sixty-eight newspapers worldwide,[2] a one-day
quarter-page "Notice of Final Deadline of
June 30, 1994, for Filing Claims with the
Dalkon Shield Claimants Trust."[3] This no-
tice specifically, repeatedly and unambigu-
ously warned potential claimants that the
deadline was final and that individuals failing
to meet the deadline will be "forever barred
from asserting any claim". In devising this
notice scheme, the Trust balanced the notice
interests of *potential* claimants (i.e., individu-
als with only contingent, unliquidated Late
Claims) against the interests of existing time-

---

1. The Court is mindful that Allen is proceeding
*pro se* in this matter. While Movant has not filed
a formal motion with the Court, her written
request will be treated as a motion for relief from
the Trust's final filing deadline. *See Gordon v.
Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.) (courts
must liberally construe the pleadings of *pro se*
parties), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464,
58 L.Ed.2d 431 (1978); *Coleman v. Peyton,* 340
F.2d 603, 604 (4th Cir.1965) (same).

2. A list of these newspapers is attached to the
Trust's memorandum as Exhibit F.

3. The Trust also notified directly by mail any
potential claimants whose identities were reason-
ably ascertainable.

ly and late claimants. *See Vancouver Women's Health Collective Soc'y v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir.1987). Specifically, the Trust placed great emphasis on the highly publicized nature of the Robins proceedings and the numerous and widely disseminated notices regarding the need to file a claim, which were promulgated both during the Robins bankruptcy and after.[4] From these facts, the Trust reasoned that the April, 1994, notice described above was sufficient to warn potential claimants, whose identities could not be ascertained through due diligence, of the June 30, 1994, deadline. This Court has previously affirmed that this notice was sufficient, in light of all the circumstances, to apprise all unknown, potential Dalkon Shield Claimants of the final filing deadline. *Smith v. Dalkon Shield Claimants Trust*, 197 B.R. 495, 499 (E.D.Va.1995).

Essentially, the June 30, 1994, deadline was compelled by the pending need to wind up the Trust's affairs. In particular, the Trust determined that it was essential, at this stage of the Trust's finite existence, to formulate accurate projections of (1) the Trust's ability to pay all Timely Claims, (2) the level of funds remaining, if any, to compensate valid Late Claims, and (3) the level of funds available for a *pro rata* distribution under CRF § G.14. In the Trustee's judgment, allowing an open window for the filing of late claims frustrated this undertaking, and they acted accordingly. This Court has heretofore concluded that the establishment of this deadline was within the Trust's authority because the Trust's limited existence made the deadline both "necessary and inevitable." *Smith*, 197 B.R. at 498–99.[5]

## II.

Movant states that she had a Dalkon Shield inserted in 1974, and that she underwent a hysterectomy in 1977. Movant alleges that the hysterectomy resulted from her use of the Dalkon Shield. In her request, Movant admits her awareness "that the deadline for appeals was June 30, 1994," yet seeks relief from the June 30, 1994, final filing deadline.

Movant's request must be denied. Movant had over fifteen years to learn of the problems associated with the Dalkon Shield and the possibility of receiving compensation through filing a claim with the Trust. Moreover, at argument she acknowledged that approximately one to one and one-half years prior to June 30, 1994, she was made aware of the claims process through a Seattle, Washington newspaper article. For undetermined reasons, however, she failed to file a claim at that time and now concedes that her only chance of recovery is relief from the June 30, 1994, deadline. In short, relief from the final deadline may only be granted "under the most exceptional and extraordinary circumstances," *Smith*, 197 B.R. at 500, and Movant has failed to demonstrate that her situation may be so characterized.

4. Specifically, the Trust notes the following considerations:

(1) the international publicity surrounding the Dalkon Shield [both pre- and post-bankruptcy]; (2) the global media campaign conducted by Robins in 1984 as part of its Removal Program; (3) the extensive advertising and public relations notice campaigns conducted by Robins pursuant to this Court's Order regarding the April 30, 1986 bar date; (4) the public notice given in the newspapers and magazines in the United States of the July 18, 1988 confir-

mation hearing before this Court on the Plan; and (5) the far-reaching newspaper publication of the opportunity to assert claims in the *Breland* class action.
Trust Response Mem. at 10–11.

5. The Court also plainly determined that any unfairness accruing to individual claimants was " 'absolutely unavoidable' in light of the Trust's larger purpose of serving the group of claimants as a whole." *Smith*, 197 B.R. at 499 (*quoting Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590, 597 (E.D.Va.1994)).