In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

Eleanor and Norman WARREN,
Movants,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

Kelly LUSCOMBE, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 21, 1995.

Larry A. Chamish, Newark, New Jersey,
for Eleanor and Norman Warren.

Stephen J. Gorski, Gorski & Shaiken, San
Francisco, California, for Kelly Luscombe.

Anne M. Glenn, Richmond, Virginia (Melo-
dy G. Foster, on the briefs), for Dalkon
Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

Dalkon Shield Claimants Eleanor and Nor-
man Warren and Kelly Luscombe separately
seek relief from the Dalkon Shield Claimant
Trust's ("Trust") final June 30, 1994, deadline
to file a Dalkon Shield claim. For the rea-
sons which follow, their requests will be de-
nied.

### I.

Faced with the need to wind up its affairs,
the Trust established a final deadline of June
30, 1994, to file a Dalkon Shield claim. Spe-
cifically, the Trust concluded that it was

> essential, at this stage of the Trust's finite
> existence, to formulate accurate projec-
> tions of (1) the Trust's ability to pay all
> Timely Claims, (2) the level of funds re-
> maining, if any, to compensate valid Late

Claims, and (3) the level of funds available for a *pro rata* distribution under CRF § G.14. In the Trustee's judgment, allowing an open window for the filing of late claims frustrated this undertaking, and they acted accordingly.

*Allen v. Dalkon Shield Claimants Trust,* 197 B.R. 501, 502 (E.D.Va.1995).[1]

This Court has previously affirmed the setting of this deadline "because the Trust's limited existence made [it] both 'necessary and inevitable.' " *Allen,* 197 B.R. at 502 (*quoting Smith v. Dalkon Shield Claimants Trust,* 197 B.R. 495, 498–99 (E.D.Va.1995)). While the Court also acknowledged that anyone who failed to file a claim by this bar date will, in nearly all cases, be precluded from compensation, the Court concomitantly determined that any unfairness befalling individual claimants is " 'absolutely unavoidable' in light of the Trust's larger purpose of serving the group of claimants as a whole." *Smith,* 197 B.R. at 499 (*quoting Besag v. Dalkon Shield Claimants Trust,* 197 B.R. 590, 597 (E.D.Va.1994)). On this basis, the Court has held that relief from the June 30, 1994, is warranted only "under the most exceptional and extraordinary circumstances." *Smith,* 197 B.R. at 500.

1. The June 30, 1994, deadline was preceded by an advertising and direct mail notice campaign. More particularly, in mid-April, 1994, the Trust published a one-day quarter-page "Notice of Final Deadline of June 30, 1994, for Filing Claims with the Dalkon Shield Claimants Trust" in nearly seventy newspapers around the world. The Trust also notified, by direct mail, any possible claimants whose identities were reasonably ascertainable. These notices warned potential claimants of the deadline's finality and stated that anyone failing to meet the deadline will be "forever barred from asserting any claim". In implementing this notice campaign, the Trust balanced the interests of potential claimants (i.e., individuals with only contingent, unliquidated Late Claims) against the interests of existing timely and valid late claimants. *See Vancouver Women's Health Collective Soc'y v. A.H. Robins Co., Inc.,* 820 F.2d 1359, 1364 (4th Cir.1987). In balancing these interests, the Trust focused upon the following considerations:

(1) the international publicity surrounding the Dalkon Shield [both pre- and post-bankruptcy];
(2) the global media campaign conducted by

## II.

### A. Eleanor and Norman Warren

■ On January 17, 1995, counsel for the Warrens sent a letter to the Court requesting that his clients be permitted to initiate the claims resolution process.[2] In this letter, counsel states that a suit the Warrens filed in 1985 against A.H. Robins Co. was stayed by the Chapter 11 proceedings. He then acknowledges that his office received correspondence in 1985 instructing that "creditors of the A.H. Robins should file certain documentation with [this Court]." Ltr. From Larry Chamish Seeking Relief from Bar Date, Docket No. 21450. In requesting that his clients be allowed to proceed with their claim, counsel admits that the Warrens failed to submit the necessary documents because "[t]he necessary documentation in pursuit of my client's claim was not furnished by this office." *Id.*

The Court is unconvinced that counsel's failure to furnish the necessary claims documents is sufficient to warrant relief from the June 30, 1994, bar date. To reiterate, relief is warranted in only the most exceptional circumstances. *Smith,* 197 B.R. at 500. The Warrens simply cannot satisfy this exacting standard by claiming, nine years after the

Robins in 1984 as part of its Removal Program; (3) the extensive advertising and public relations notice campaigns conducted by Robins pursuant to this Court's Order regarding the April 30, 1986 bar date; (4) the public notice given in the newspapers and magazines in the United States of the July 18, 1988 confirmation hearing before this Court on the Plan; and (5) the far-reaching newspaper publication of the opportunity to assert claims in the *Breland* class action.
*Allen,* 197 B.R. at 502 n. 4.
The Court has previously determined that this notice effort was sufficient, in light of all the circumstances, to apprise all unknown, potential Dalkon Shield Claimants of the final filing deadline. *Smith v. Dalkon Shield Claimants Trust,* 197 B.R. 495, 499 (E.D.Va.1995).

2. The Trust correctly notes that this letter should be treated as a motion for relief from the June 30, 1994 bar date, rather than a Rule 60(b) motion for reconsideration of a disallowed claim, as there has never been a claim to disallow in the first instance.

filing of their suit, that the appropriate claims materials were not provided by their attorney. *Cf. Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390 (4th Cir.1994) (reconsideration of summary judgment motion may not be based upon attorney error because parties are bound by the acts of their attorney); *Evans v. United Life & Accident Ins. Co.,* 871 F.2d 466, 472 (4th Cir.1989) (lawyer ignorance or carelessness are not proper grounds for Rule 60(b) relief). Accordingly, the Warren's motion will be denied.

### B. Kelly Luscombe

■ Luscombe was fitted with a Dalkon Shield in 1973 and had it removed in 1979. Neither during this period nor thereafter did Luscombe ever file suit against Robins or submit a claim to the Trust. In July, 1994, Luscombe underwent a laparoscopy after her physician detected a large mass in one fallopian tube. After surgery, her doctors informed her that her injury may have been related to Dalkon Shield usage. Luscombe now petitions the Court for relief from the bar date on the basis that she did not discover her injuries until after the June 30, 1994, bar date. *See* Luscombe Motion, Docket No. 22616.

Luscombe surely presents a sympathetic case. Nevertheless, there is no escaping her admissions that the subject mass was discovered "on or about late 1993" and that she was informed at that time that surgery was necessary, Luscombe Motion, Docket No. 22616 at 2; thus, Luscombe had at least six months to file a claim and preserve her rights in the event surgery suggested that her injuries were Dalkon Shield-related. Of equal importance, it is undisputed that all users of the Dalkon Shield received notice, beginning with an extensive January, 1986 publication

campaign,[3] that the filing of a claim was necessary to preserve any rights against the Trust, whether or not they had yet experienced an injury. *E.g.,* Trust Mem., Ex. B (notice of April 30, 1986 Bar Date). Consequently, the Court will deny Luscombe's motion.[4]

### III.

The Trust is in business to go out of business; thus, a final claims filing deadline was necessary. The Trustees selected June 30, 1994, as the appropriate date. This deadline is absolutely final in all but the most exceptional and extraordinary cases. Neither of the motions under consideration may be so characterized. Accordingly, each will be denied.

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

---

3. While Luscombe states that she was travelling abroad in early 1986, she overlooks the fact that the Trust also engaged in a broad foreign public relations effort with respect to the April, 1986 bar date. This foreign notice campaign was affirmed on appeal by the United States Court of Appeals for the Fourth Circuit. *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.,* 820 F.2d 1359 (4th Cir.1987).

4. Luscombe suggests that she has a valid claim under § 502 of the Bankruptcy Code. Her reliance on this section is entirely misplaced. To begin, § 502 refers only to claims for "reimbursement or contribution" by a codebtor, surety or guarantor. *See* 11 U.S.C. § 502(e)(1) & (e)(2). A Dalkon Shield claim is not an indemnification or contribution claim by a codebtor or guarantor. Second, the Plan and this Court's Orders unequivocally set forth the proper procedure for addressing future claims. *See generally* CRF.