In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.

Employers Tax Identification No. 54–0486348.

Qiona R. BENNETT, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

Bankruptcy No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

Dec. 20, 1996.

---

Qiona R. Bennett, Barbara L. Burden, Columbus, OH, pro se.

1. Bennett's Motion was filed on her behalf by her mother, Barbara L. Burden ("Burden"). Bennett, who is a twenty-four year woman and who suffers from no disability, never appeared before the Court and was not heard on this issue. Although all action taken in this matter was done so by Burden, the Court, for clarity, will refer to the motion as Bennett's, as she is the individual who seeks to assert a claim against the Trust.

2. Bennett's Motion was docketed as a "Motion to File Late Claim." The Court notes that Bennett, through her mother, appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the Motion of Qiona R. Bennett ("Bennett") To File Dalkon Shield Claim Against Dalkon Shield Claimants Trust.[1] Bennett asks for relief from the June 30, 1994 Late Claim bar date and that she be approved to file a claim against the Trust.[2] The parties have been heard on this motion and the matter is ripe for disposition. For the reasons which follow, the Court will deny Bennett's motion.

### I.

Faced with the need to wind up its affairs, the Dalkon Shield Claimants Trust (the "Trust") established a final deadline of June 30, 1994 to file a Dalkon Shield claim (the "Late Claim bar date"). Specifically, the Trust concluded that it was

> essential, at this stage of the Trust's finite existence, to formulate accurate projections of (1) the Trust's ability to pay all Timely Claims, (2) the level of funds remaining, if any, to compensate valid Late Claims, and (3) the level of funds available for a *pro rata* distribution under CRF § G.14. In the Trustee's judgment, allowing an open window for the filing of late claims frustrated this undertaking, and they acted accordingly.

*Allen v. Dalkon Shield Claimants Trust,* 197 B.R. 501, 502 (E.D.Va.1995).[3]

U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965).

3. The June 30, 1994, deadline was preceded by an advertising and direct mail notice campaign. *See, e.g., Warren v. Dalkon Shield Claimants Trust*, 197 B.R. 503, 504 n. 1 (E.D.Va.1995) (describing the Trust's notice campaign); *Allen*, 197 B.R. at 501–02 (describing same). This Court has previously determined that this notice effort was sufficient, in light of all the circumstances, to apprise all unknown, potential Dalkon Shield Claimants of the final filing deadline. *Smith v. Dalkon Shield Claimants Trust*, 197 B.R. 495, 499 (E.D.Va.1995).

This Court has previously affirmed the setting of the Late Claim bar date "because the Trust's limited existence made [it] both 'necessary and inevitable.'" *Allen*, 197 B.R. at 502 (quoting *Smith v. Dalkon Shield Claimants Trust*, 197 B.R. at 498–99 (E.D.Va.1995)). While the Court also acknowledged that anyone who failed to file a claim by the Late Claim bar date will, in nearly all cases, be precluded from compensation, the Court nevertheless determined that any unfairness befalling an individual claimant is "'absolutely unavoidable' in light of the Trust's larger purpose of serving the group of claimants as a whole." *Smith*, 197 B.R. at 499 (quoting *Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590, 597 (E.D.Va. 1994)). On this basis, the Court has held that relief from the June 30, 1994 Late Claim bar date, is warranted only "under the most exceptional and extraordinary circumstances." *Smith*, 197 B.R. at 500; *Allen*, 197 B.R. at 502.

## II.

The record in this case reveals that Bennett's mother, Burden, used the Dalkon Shield from June 1972 to June 13, 1974. Bennett was born on March 25, 1972, shortly before her mother began to use the Dalkon Shield. Bennett does not dispute that she is an essentially normal, healthy adult with no claim of physical injury from her mother's use of the Dalkon Shield. Nevertheless, Bennett is before the Court, seeking to assert a Dalkon Shield claim on the theory that she was injured by her mother's inability to have additional children as a result of Dalkon Shield use.[4] Bennett also asserts that she was injured because she felt compelled to serve her mother's desire for additional children by having a child of her own when she was fourteen, and another at age sixteen. The Trust opposes Bennett's Motion for relief from the Late Claim bar date.

4. Burden filed a Dalkon Shield claim in 1986. She went through to Option 3 claims process, rejected her offer, and later proceeded with litigation in federal court. The Court also notes that Burden's husband, Bennett's stepfather, settled his claim under Option 1 in June 1989. *See* Trust Mem. at 6–10.

## III.

■ Before the Court can address the issue of whether Bennett is entitled to relief from the 1994 Late Claim bar date, it must first address the issue of whether Bennett asserted a valid claim *prior* to that deadline. In her Motion, Bennett argues that she did not miss the 1994 Late Claim bar date because her mother requested compensation for Bennett on numerous occasions during the processing of Burden's claim. The record reflects that Burden indicated on two occasions prior to June 30, 1994 that she felt that part of her injury was the fact that her daughter had been raised as an only child. A review of Burden's correspondence received by the Trust is instructive.

The first communication from Burden which refers to her daughter was Burden's Option 3 claim form received by the Trust on September 27, 1990.[5] That form contained the following questions and responses by Burden:

Q: Please describe your expected future medical problems, illnesses, injuries, or loss.

A: My future medical loss *is* infertility. My only child will never be able to have siblings. It caused her to have a child when she was *14* years old because she was aware of my emotional state and dispair [sic] and she gave birth to a second child at age *16*.

    .    .    .    .    .

Q: Please describe, in your own words, the nature of this medical problem, any medical treatment you had, and the results of the injury or treatment for the injury.

A: See statement attached.[6]

Also: being unable to bear my husband children problem persued [sic] causing us to divorce.

5. A copy of Burden's Option 3 claim form is attached to the Trust's Memorandum as Exhibit A.

6. The statement attached by Burden did not mention Bennett. *See* Trust Mem. at 11.

And my daughter became pregnant again at age 16.

Trust Ex. A. at 1–2 (emphasis in original).

Several years later, after Burden rejected her Option 3 offer, the Trust wrote to Burden, describing the In–Depth/Voluntary Settlement Conference stage of Option 3. Attached to that correspondence was a "Settlement Conference Request for Additional Information" form. On April 1, 1993 the Trust received this completed form which contained the following question and response by Burden: [7]

Q: Please list below any specific questions the claimant would like answered regarding the Trust's evaluation of his or her claim. The Trust will try to answer such questions at the settlement conference, but cannot divulge confidential information regarding its claim evaluation rules and procedures.

A: 1. Being that I was told by several Doctors that I need a hysterectomy, is there still hope for a pregnancy?

2. How do you think, and what can be done for my only child who was never able to have any sibblings [sic]?

3. What can be done to the fact that I became a grandmother at 31?

Trust Ex. B at 2.

In June 1993, before the settlement conference was set, Burden asked that her claim be re-evaluated in light of additional medical records that she had submitted. After the re-review was completed but before the settlement conference occurred, Burden requested a new Settlement Conference Request for Additional Information form. On January 23, 1995, the Trust received Burden's second completed form.[8] Burden did not mention Bennett on this new form, and in fact Burden left several questions blank where she had, on her previous form, mentioned her daughter.

Finally, on June 29, 1995, nearly one year after the Late Claim bar date, Burden wrote to the Trust rejecting her settlement offer.[9] In that letter Burden stated:

My child knew how desperately I wanted a baby that she became pregnant at 14 years old. My child should be included in compensation for this damaging ordeal of my life and hers.

The only child I did have has not been compensated for not having any siblings and also her pain and suffering. I've mentioned in my previous letters and responses to you for her to be compensated and if you look through the records it is noted that I've always since, I've had this claim requested for her to be compensated.

Trust Ex. E at 2. While this letter arguably expresses an intent to file a claim on Bennett's behalf, it was not received by the Trust prior to the Late Claim bar date and can therefore not serve as a basis for Bennett's contention that her claim was timely.

The Court also notes that Bennett has attached a third completed Settlement Conference Request for Information form as Exhibit A to her Reply Brief. In this form, Burden states:

Why hasn't my only child been considered for some type of fund in this matter? [She] never had any sibblings [sic]. She became pregnant at 14. I want compensation for her since I filed this claim and also the 2 children she birth under age. She felt I wanted a child so much and seen I couldn't have any and felt she had to give me [one]. Her exact words were when I found out she was pregnant "well you wanted a [child] didn't [you]?

Bennett Ex. A.

The Trust claims that it never received this form from Burden and was therefore unaware of Burden's desire to file a claim on Bennett's behalf. The Court finds that this form, regardless of whether it was received

---

7. A copy of the form returned by Burden is attached to the Trust's Memorandum as Exhibit B.

8. A copy of the second form returned by Burden is attached to the Trust's Memorandum as Exhibit D.

9. A copy of Burden's letter is attached to the Trust's Memorandum as Exhibit E.

by the Trust, is irrelevant to the Court's determination of whether Burden filed a claim on Bennett's behalf before the 1994 Late Claim bar date. This is because the "Revision Date" printed on the form itself is "December 9, 1994," indicating that this form was generated by the Trust over five months after the June 30, 1994 deadline. It follows, therefore, that this form could not have been received by the Trust prior to the Late Claim bar date.

The Court finds that while Burden did mention her daughter on both her Option 3 claim form and her first Request for Additional Information form prior to the Late Claim bar date, the statements contained in those forms did not suggest an intent to file a claim for Bennett. On the contrary, the Trust correctly viewed these statements as Burden's version of her *own* injuries—that is, Burden's own mental distress over the perceived effect of her Dalkon Shield use on her daughter. This conclusion is reenforced by the fact that these statements were given in response to questions directed toward what the Claimant felt were his or her injuries. Indeed, if the mere mention of another person in a Claimant's claim form were to require the Trust to assign a claim number to those persons mentioned, the Trust would have had to automatically create claims for thousands of persons who may have had no injury or basis for relief.[10] It was not until June 1995 that Burden gave the Trust any indication of her desire to file a claim on behalf of her daughter. *See* Trust Ex. E. Of course, by that time, not only had the June 30, 1994 deadline passed, but Bennett was twenty-three years old and could have easily pursued her own claim.

The Court is satisfied that Burden, who was represented by six different lawyers at various times until 1993,[11] whose husband had filed a claim, and who herself had filed a claim, knew that she could have asserted a claim on Bennett's behalf by simply writing a letter to the Court stating her desire to do so. Having failed to do so, the Court finds that Burden did not assert a claim on behalf of her daughter prior to the June 30, 1994 Late Claim bar date.

## IV.

■ Having determined that Bennett, through her mother, failed to file a timely claim, the Court must now consider whether Bennett is entitled to relief from the 1994 Late Claim bar date. The Court has little difficulty concluding that this question must be answered in the negative. Bennett's grounds for failing to file a claim fall well short of the "exceptional and extraordinary circumstances" required for this Court to grant relief from the final deadline. *See Smith,* 197 B.R. at 500; *Allen,* 197 B.R. at 502. Bennett concedes that she turned eighteen years old on March 25, 1990, four years before the 1994 Late Claim bar date, and that she suffers from no legal disability. It is also undisputed that, unlike her mother or stepfather, Bennett was never assigned a Dalkon Shield claim number nor did she ever receive any correspondence from the Trust. Thus, Bennett knew or should have known that she had not filed a claim against the Trust.[12] The only excuse offered by Bennett for her failure to pursue a timely claim is her contention that her mother had repeatedly mentioned Bennett during the processing of

10. The Trust followed a published policy of creating a separate claim for a child mentioned in a communication from a claimant only when that communication "indicat[ed]" an intent to file a claim on behalf of an injured child." Attorney Update, June 1990 at 2 (attached to Trust Memorandum as Exhibit G).

11. Bennett states that her mother at some point retained a law firm to represent Burden in her claim against the Trust and that the firm assured Burden that they would file a claim on behalf of Bennett. The firm, for reasons not mentioned by Bennett, did not do so. Assuming, *arguendo,* that Bennett's claim was meritorious, a contention for which the Court expresses serious doubt,

this Court has previously held that an attorney's failure to furnish the necessary claims documents is not sufficient to warrant relief from the 1994 Late Claim bar date. *Warren,* 197 B.R. at 504–05.

12. The Court emphasizes that it does not hold that constructive knowledge of the Late Claim bar date requires that the potential claimant be related to, or know of, an actual claimant. Instead, under the circumstances of this case, Bennett's close relationship to persons who did file claims underscores the Court's conclusion that she is not entitled to the relief she seeks.

her mother's claim. The Court has already determined, however, that Burden's statements to the Trust did not express an intent to file a claim on behalf of Bennett. Accordingly, Bennett has failed to satisfy the "exceptional and extraordinary circumstances" required for relief from the June 30 1994 Late Claim bar date. Her Motion will therefore be denied.