**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor, Employer's Tax Identification No. 54–0486348.**

**Joe L. HAMILTON, Movant,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

**No. 85–01307–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 5, 1995.

---

**506**

Joe L. Hamilton, Aiken, South Carolina, pro se.

Orran Lee Brown, Richmond, Virginia (Melody G. Foster, on the briefs), for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge and BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter is before the Court on a Motion by Dalkon Shield Claimant Joe L. Hamilton ("Hamilton") asking the Court to order the Dalkon Shield Claimants Trust ("Trust") to reinstate his disallowed claim. (DS–122304). Hamilton's claim was disallowed by the Trust for failing to return completed claim materials to the Trust by its August 1, 1994 deadline. His prayer for relief rests on the argument that he was unaware of the deadline, having never received actual notice of it. He moves that he should therefore be excused from failing to meet the deadline and have his claim reinstated. For the reasons which follow, the motion will be denied.

### I.

In February, 1994, the Trust announced a final deadline of August 1, 1994, for claimants to submit all necessary claim materials to the Trust. This deadline was established in an effort to expedite the processing of claims that had been stalled in the Claims Resolution Facility (the "CRF") system for years. These claims were stalled because numerous claimants had failed to submit all of the necessary forms and medical information required for processing.[1] Pursuant to the Trust's policy set in February, 1994, of disallowing all claimants who failed to correct the deficiencies in their claim materials before the announced August 1, 1994 deadline, the Trust sent a total of four letters to each

---

1. As of March 15, 1994, there were 6,548 claimants who had filed claims as either users or non-users of the Dalkon Shield and had elected Option 2 or Option 3 under the CRF, but who had either failed to submit any of the forms and medical information required to process their claims, or had presented incomplete material that was returned as deficient. There were also 157 persons who chose Option 1 or to withdraw

claimant warning each of the deadline and its ramifications.[2]

## II.

Hamilton and his wife, Gladys Hamilton, each had filed a proof of claim with the Court on February 3, 1986. Both were filed by their attorney, Gorman H. King ("King"). King filed separate, completed questionnaires for each of the Hamiltons. In March, 1990, the Trust sent King two sets of complete Claim Packets containing all of the necessary forms to pursue the Hamiltons' claims.[3] Option election forms were eventually received from the Hamiltons on June 21, 1991. Both elected to proceed through Option 3. No medical records or claims forms had been submitted by that time.

On February 9, 1994, Hamilton's wife wrote to the Trust expressing her intention to dismiss King as her attorney. This letter did not make any reference to Hamilton's claim and made no mention of releasing King as his attorney. In fact, the letter simply stated,

"I, Gladys Hamilton, request that my attorney, Mr. Gorman H. King be dismissed from proceeding with my case immediately. I choose to proceed with my case myself."

No medical records from either of the Hamiltons had been received by the Trust. On February 17, 1994, the Trust wrote King informing him of Mrs. Hamilton's request and explaining that he would be removed from the records of the Trust as her counsel fifteen days from date of the letter. The Trust subsequently advised Mrs. Hamilton that it had removed King as her attorney in their records.

On March 15 and May 2, 1994, the Trust sent Mrs. Hamilton the first two of the four

letters warning of the August 1, 1995 deadline. Acting on her instructions to release King as her attorney of record, the Trust sent these letters directly to the address referred to in her letter, *supra*. In response to these first two warnings, Mrs. Hamilton sent an Option 3 claim book and medical records to the Trust. These documents were received on May 16, 1994.

In the meantime, the Trust also sent all four warning letters to Mr. Hamilton. Having received no notification of Mr. Hamilton's desire to release King as his attorney, the Trust sent all of this correspondence to Hamilton's attorney, King, at King's address. Hamilton alleges that these letters were never forwarded to him. By the time the August 1, 1994, deadline arrived, the Trust had yet to receive any medical records from Hamilton.

On October 28, 1994, the Trust made a settlement offer to Mrs. Hamilton. Realizing this offer did not include payment for his own claim, Hamilton called the Trust to inquire about his status. The Trust informed Hamilton that his claim had been disallowed for failing to present his claim materials by the August 1, 1994 deadline. On November 22, 1994, Hamilton wrote to the Trust requesting that his claim be reinstated. He also requested that King be removed as his authorized agent on his Trust claim. On January 11, 1995, the Trust wrote back to Mr. Hamilton, informing him that his reasons for missing the deadline were not excusable, and, therefore, the Trust would not reinstate his disallowed claim.

Mrs. Hamilton's ADR hearing was subsequently conducted and she was given an award on July 13, 1995. Six days later, on July 19, 1995, Mr. Hamilton wrote to this

---

their claims, but had not submitted a completed form to allow final payment on their claims.

**2.** On March 15, 1994, the Trust sent a letter to all Option 2 or Option 3 user claimants who had failed to submit the required claim materials. This letter advised the claimants that failure to complete their claim by the August 1, 1995 deadline would result in their claim being disallowed. A similar letter was sent to non-user claimants, such as Mr. Hamilton, on April 1, 1994. The Trust then mailed a postcard on May 2, 1994, a certified letter on June 1, 1994, and a final letter

on July 18, 1994 warning claimants of the upcoming deadline.

**3.** King's office address was chosen by each of the Hamiltons as the address they wished to utilize in receiving correspondence from the Trust. There is no record or contention that the claimant here ever notified the Trust of any change of address. Mrs. Hamilton did in her letter of January 7, 1994 referring to her address as 445 Outing Club Road, Aiken, South Carolina, 29801. No reference to the instant claimant was made in that communication.

Court with the present Motion. Hamilton essentially asks for this Court to order the Trust to excuse his failure to meet the August 1, 1994, deadline and to reinstate his disallowed claim. First, Hamilton alleges that he did not know it was necessary for both he and his wife to write a letter to the Trust dismissing King. Second, Hamilton alleges that because of King's failure to forward the warning letters, he had never received notice of their contents.

### III.

This Court has the exclusive jurisdiction to interpret the relevant instruments and address these matters. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va. 1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *see also In re A.H. Robins Co., Inc.*, 972 F.2d 77 n. 1 (4th Cir. 1992) (affirming the Court's exclusive jurisdiction).

■ As already noted, this Court retains jurisdiction over the Trust for many purposes. This power, however, is somewhat limited. Section 8.05 of the Plan specifically states that "nothing contained in this Section 8.05 is intended to confer jurisdiction upon the Court over, or grant authority to monitor, the day-to-day operations of the Trusts or the Claims Resolution Facility." Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05. Accordingly, before this Court can provide any relief from the Trust's decision to disallow Hamilton's claim, Hamilton "must show facts or issues that elevate the matter above the level of ordinary operations." *Mantush v. Dalkon Shield Claimant's Trust*, 197 B.R. 493, 494 (E.D.Va.1994).

In *In re A.H. Robins (Almalich v. Dalkon Shield Claimants Trust)*, 197 B.R. 485 (E.D.Va.1994), this Court addressed certain claimants' attempt to obtain relief from having to meet the August 1, 1994 deadline. The Court held that the, "establishment of the August 1, 1994, deadline is within the Trust's authority and constitutes an *ordi-*

*nary, day-to-day operation* in the management of the claims process." (Emphasis added) *Id.* at 487. The Court then refused to grant relief from the Trust's discretionary decision.

■ The only question in this case, therefore, is whether Hamilton has shown facts which elevate the Trust's decision to disallow his claim "above the level of ordinary operations." Hamilton bases his request for relief on the ground that he "never did receive notice about the deadline date for his claims." This Court holds, however, that the Trust satisfied its duty of notifying Mr. Hamilton.

The Trust followed standard procedures in mailing all letters in care of Hamilton's attorney, pursuant to Hamilton's unrescinded instructions. Under Trust policy, all communications will be directed to the address given by the claimant until contrary instructions are received.[4] The Trust, in the absence of other instructions to the effect that King had been discharged by Mr. Hamilton, had no other option than to follow Trust policy and continue sending letters to Hamilton's attorney of record. Indeed, the record reflects that the Trust was advised by Mr. Hamilton of his discharge of Attorney King, by letter dated November 22, 1994. This was almost four months after the deadline of August 1, 1994. As this Court explained in *In re A.H. Robins Co. (Harris v. Dalkon Shield Claimants Trust)*, 197 B.R. 491 (E.D.Va.1994), "the failure of actual notice under due process is not determinative of the sufficiency of notice under due process, particularly where . . . the failure of actual notice is due to the fault of the movant. The Trust provided notice as instructed by the movant. It is not required to do more." *Id.* at 492.

The Claimants Trust Agreement gives the Trustees broad authority to act as they "deem reasonably necessary or desirable for the proper management of the Trust." CTA 4.03(b). The Trust must, at some point, require claimants to meet certain deadlines in order to further the timely and efficient resolution of claims. In *Shukis v. Dalkon Shield Claimants Trust*, 175 B.R. 204 (Bkrtcy.

---

4. The records of the Trust indicate that with rare, if any, exceptions represented claimants invari-ably seek all communications from the Trust to be forwarded in care of their attorney.

E.D.Va.1994), this Court recognized the Trust's need to set certain deadlines in order to carry out its ultimate goals:

> Nothing in the language of [§ 1.48 of the Plan] indicates that the Trust may not, in a valid exercise of discretion under the Claimants Trust Agreement or other Trust instrument, impose a deadline and disallow any stalled claims remaining upon the passing of the deadlin.... In short, the interests of the group of claimants as a whole necessitates the setting of deadlines to dislodge claims stalled in the claims resolution process.

*Id.* at 211. Furthermore, the CRF gives the Trust power to disallow claims for which complete and timely forms have not been returned, "unless the claimant is able to demonstrate to the satisfaction of the Trustees that the failure should be excused." CRF § B.

The Trustees properly exercised their discretion in finding that Hamilton should not be excused from missing the August 1, 1994 deadline. In order for this Court to intervene in this action, Hamilton must prove facts or issues elevating the Trust's decision above the day-to-day operations of the Trust. The Court finds that Hamilton has failed to meet this burden. Accordingly, the Motion will be Denied.