In re A.H. ROBINS COMPANY, INCORPORATED, Debtor, Employer's Tax Identification No. 54–0486348.

Cynthia A. ROTHBARD, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 12, 1996.

J. Patrick Butler, Dickerson, Butler, Rabb & Rodriguez, P.C., Tucson, Arizona, for Cynthia Rothbard.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on a Motion by Dalkon Shield Claimant Cynthia A.

Rothbard ("Rothbard") for Reinstatement of her Claim to Permit her to Proceed under Option 3. The Dalkon Shield Claimants Trust ("Trust") disallowed Rothbard's Dalkon Shield Claim for failing to elect an option and to submit her claim materials by the June 30, 1995 deadline that had been established by the Trust. For the reasons which follow, the Motion will be denied.

## I.

On March 30, 1990, this Court entered an Order requiring the Trust to accept claims that had not been filed before the April 30, 1985 Bar Date. All claims filed after the Bar Date were considered "Late Claims" by the Trust. The Trust notified all potential Late Claimants that June 30, 1994, was the deadline for filing a Late Claim. Rothbard mailed her claim to the Trust on March 22, 1993, and her claim was appropriately classified as a Late Claim.

By 1994, the Trust was prepared to begin processing Late Claims. The Trust, however, was concerned with the necessity of fully, fairly and expeditiously processing all Late Claims. Therefore, on or about January 16, 1994, the Trust sent packets to all Late Claimants that included Option 1, 2 and 3 election forms. Also, this packet explained that June 30, 1995, had been set as the deadline for Late Claimants to elect an option and return their claim materials to the Trust. Anyone who failed to return the required materials by this time would have their Late Claim disallowed. Rothbard, however, failed to meet the June 30, 1995 deadline, and her Late Claim was subsequently disallowed by the Trust.

## II.

Rothbard moves this Court for reinstatement of her claim. She argues that her failure to submit an option election form in a timely manner was the result of mistake, inadvertence or excusable neglect on the part of her attorney, J. Patrick Butler ("Butler"). In support of this motion, Rothbard has filed affidavits from Butler and Butler's paralegal, Shirley Duran ("Duran").

Rothbard's motion claims that on June 29, 1995, one day before all election forms were due at the Trust offices in Richmond, Virginia, she sent an Option 1 election form from her home in San Diego, California, to Butler's office in Tucson, Arizona.[1] The motion alleges that within the next twenty-four hours, after consulting with independent counsel, Rothbard changed her mind and decided to proceed under Option 3.

Duran's affidavit states that Rothbard telephoned her on June 29, 1995, and explained that she wished to proceed under Option 3. This call apparently took place on the same day that Rothbard's Option 1 election form was allegedly sent to Butler's office. Duran claims that after consulting the Option 1 election form, she concluded that it was unnecessary to send an Option 3 election form to the Trust by the June 30, 1995, deadline. Duran admits, however, that after completely reviewing Rothbard's file in July, 1995, she realized that an error had been made.

Butler's affidavit states that he spoke with Rothbard on June 30, 1995, when she advised him of her desire to proceed under Option 3. Butler, like his paralegal, claims to have referred to the Option 1 form and concluded that the language referring to the June 30, 1995, deadline only applied to Option 1 elections. Therefore, Butler claims no Option 3 form was filed by the June 30 deadline. Butler further states that his file reflects "some correspondence" from the Trust advising him that the June 30 deadline applied to all three options, and that "he did not have all of the correspondence committed to memory as of June 30, 1995." Butler's affidavit, however, fails to mention the numerous warnings sent to him by the Trust. In fact, as discussed below, the Trust delivered clear warnings on numerous occasions of the June 30, 1995 deadline and the consequences of failing to meet that deadline. The motion does not allege that Butler failed to receive this correspondence.

In December, 1994, the first warning was included in a document mailed to all Late Claimants entitled *Late Claims Report.* Among other things, this newsletter an-

---

1. Rothbard does not explain how the forms were     sent to Tucson.

nounced that the Trust would be sending claim packets to all Late Claimants in January, 1995, and described the three options available to claimants under the CRF. Additionally, the newsletter clearly stated in bold print that **"Completed claim forms and required medical records must be returned to the Trust by June 30, 1995."**

The second warning was sent on or about January 16, 1995, when the Trust mailed the previously announced claim packets to over 19,000 Late Claimants. Along with the option election forms, the packets included a document entitled "What You Need to Know to File Your Dalkon Shield Claim." Inside the packet were conspicuous warnings advising lawyers and claimants that no matter which option they elected, all completed claim materials had to be received by the Trust no later than June 30, 1995. These warnings were prominently placed on the first page of the instruction booklet[2], as well as on the top of the Option 1 Form and Withdrawal Forms, and on the face of the claim booklets for Option 2 and Option 3.[3]

On February 28, 1995, this Court directed the Trust to treat and consider all Late Claims as Timely Claims. This action permitted the Trust to begin paying off Late Claims. Accordingly, in a letter dated March 3, 1995, the Trust notified all Late Claimants of the Court's Order and advised them that their claims could be paid as soon as an option election form and supporting documentation were received. Additionally, the letter served as a third warning, stating: *"Please remember that the deadline for submitting a claim form and any necessary documentation is June 30, 1995."*

On May 1, 1995, the Trust sent a letter via certified mail to a number of Late Claimants, including Rothbard, who had failed to submit the required documentation. The letter was entitled **\*WARNING OF JUNE 30, 1995 DEADLINE\***, and explained:

[i]f the Trust does not receive an Option 1, Option 2, or Option 3 claim form by June 30, 1995, your claim will be disallowed and you will never receive any money for your Dalkon Shield Claim. Be sure that you mail your claim materials in time for the Trust to receive your materials by June 30, 1995. Under no circumstances will the Trust accept a claim form that is received after June 30, 1995.

The letter concluded with the following paragraph:

**You must make sure the Trust receives complete claim materials on your claim no later than June 30, 1995, or the Trust will disallow your claim and you will be forever barred from getting any money from the Trust or any other person for the injuries related to the Dalkon Shield.**

Butler signed for and received the May 1, 1995, warning letter on May 4, 1995. (Trust Ex. F)

The final warning to Late Claimants was sent by the Trust on June 1, 1995, in the form of a postcard. This card advised claimants that the Trust had not received their forms and reminded them of the June 30, 1995 deadline. Once again the card clearly explained that if the claim form was not received by June 30, 1995, their claim would be disallowed and they would never be able to receive money from the Trust for their injuries.

### III.

This Court has retained exclusive jurisdiction to interpret the relevant instruments

---

2. The first page of the booklet stated:
   DEADLINE WARNING: You must be sure that the Trust receives your completed claim form and all the claim materials required *no later than June 30, 1995.* Otherwise, your claim will be disallowed, and you will never receive any money from the Trust or anyone else for injuries relating to the Dalkon Shield. (Emphasis in original).

3. The warning on the Withdrawal Form, Option 1, Option 2 and Option 3 Forms stated:

   DEADLINE WARNING: If you chose this option, you must complete this form and make sure the Trust receives it and all the claim materials required in the form *no later than June 30, 1995,* or your claim will be disallowed and you will be permanently barred from ever receiving any money from the Trust or anyone else for injuries relating to the Dalkon Shield. (emphasis in original).

and enter orders in aid of interpretation of the Plan. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *see also In re A.H. Robins Co., Inc.*, 972 F.2d 77 n. 1 (4th Cir.1992) (affirming the Court's exclusive jurisdiction). While this Court retains jurisdiction over the Trust for many purposes, however, this power is somewhat limited. Specifically, the Plan states that nothing "is intended to confer jurisdiction upon the Court over, or grant authority to monitor, the day-to-day operations of the Trusts or the Claims Resolution Facility." Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05. Rather, the day-to-day operations of the Trust are committed to the discretion of the Trustees. *In re A.H. Robins Co. (Almalich v. Dalkon Shield Claimants Trust)*, 197 B.R. 485, 487 (E.D.Va. 1994), ("[a]uthority over day-to-day operations resides with the Trust.").

The Claimants Trust Agreement gives the Trustees broad authority to act as they "deem reasonably necessary or desirable for the proper management of the Trust." CTA 4.03(b). In *Shukis v. Dalkon Shield Claimants Trust*, 175 B.R. 204 (Bkrtcy.E.D.Va. 1994), this Court recognized the Trust's need to set certain deadlines in order to carry out its ultimate goals:

> Nothing in the language of [§ 1.48 of the Plan] indicates that the Trust may not, in a valid exercise of discretion under the Claimants Trust Agreement or other Trust instrument, impose a deadline and disallow any stalled claims remaining upon the passing of the deadline.... In short, the interests of the group of claimants as a whole necessitates the setting of deadlines to dislodge claims stalled in the claims resolution process.

Additionally, this Court has repeatedly held that setting deadlines in the claims resolution process, disallowing claims that failed to comply with these deadlines, and granting or denying relief from such deadlines are within the ordinary day-to-day operations of the Trust. *In re A.H. Robins Co. (Almalich v. Dalkon Shield Claimants Trust)*, 197 B.R. 485 (E.D.Va.1994); *In re A.H. Robins Co. (Joe L. Hamilton v. Dalkon Shield Claimants Trust)*, 197 B.R. 505 (E.D.Va.1995). Therefore, before this Court can provide relief from the Trust's decision to disallow Rothbard's claim, she "must show facts or issues that elevate the matter above the level of ordinary operations." *Mantush v. Dalkon Shield Claimant's Trust*, 197 B.R. 493 (E.D.Va.1994); *In re A.H. Robins Co. (Joe L. Hamilton v. Dalkon Shield Claimants Trust)*, 197 B.R. 505 (E.D.Va.1995). Rothbard fails to do so.

Ultimately, the disallowance of Rothbard's claim is the result of her own failure to promptly take action to perfect her claim. The Trust gave her ample opportunity to submit her Option election materials and clearly warned her of the ramifications of missing the June 30, 1995 deadline. Even still, Rothbard waited until June 29, 1995 to send the material to her lawyer in Arizona. This made it impossible for Butler to forward the documents to Richmond even if he had chosen to do so. Furthermore, the Trust's letters should have given Butler more than adequate warning of the deadline and its application to all Late claimants.

The Court finds incredible Mr. Butler's statements that the Option 1 Election form "clearly implies" that the deadline only applied to Option 1, and that there was "some ambiguity" in a portion of the communications that caused attorney error. The letters sent to Rothbard and other Late Claimants prominently displayed warnings of the June 30, 1995, and the Court finds no ambiguity in its instructions. It is clear to the Court that any attorney error in this case was caused by Rothbard's delay in completing her documentation and Butler's own failure in properly monitoring his client's file.

In order for this Court to intervene in this action, Rothbard must prove facts or issues elevating the Trust's decision above the day-

to-day operations of the Trust. The Court finds that Rothbard has failed to meet this burden. For these reasons, the Court finds no cause to disturb the decision of the Trust to disallow Rothbard's Late Claim and will deny her request for relief.