**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**In re Administrative Order No. 2.**

**Bankruptcy No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

Oct. 31, 1997.

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

H. Robert Erwin, Jr., The Erwin Law Firm, P.A., Baltimore, MD, for Melva J. Crouch, Donald C. Crouch, Sr., Donald C. Crouch, Jr. and Victoria Briggs.

Montgomery Mackey, Mackey & Kramer, P.C., Chicago, IL, for Pamela Crombie.

James F. McGinnis, Parlee McLaws, Barristers & Solicitors, Edmonton, Alberta, Canada, Kirk D. McQuiddy, Morris & Morris, Richmond, VA, for Donna P. Hagan and Lawrence A. Hagan.

James F. Szaller, Brown & Szaller Co., Cleveland, OH, for Valeria Griffin, Sylvia Johnson, Debbie King, Joyce Hurst, Alexander MacLeod and Eileen MacLeod.

Beth J. Laddaga, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, for Carmen and Vincent Priolo, Marilyn and Richard Moore, and Katie Wagner.

Thomas J. Knight, Anniston, AL, for Glenda Cox and Linda Palmer.

Lance C. Winchester, Helm, Pletcher, Bowen & Saunders, L.L.P., Houston, TX, for Kay Shirley Greenway.

Anthony J. Nemo, Meshbesher & Spence, Ltd., Minneapolis, MN, for James A. Bailey.

Katherine S. Kerby, Gholson, Hicks & Nichols, Columbus, MS, for Shirley C. Wilbanks.

Lynn Gold, Southport, CT, pro se.

### MEMORANDUM

MERHIGE, District Judge.

The matter is before the Court upon the Motion by the Dalkon Shield Claimants Trust for entry of Administrative Order No. 2. The Trust filed its Motion on September 22, 1997, and served it and a Notice of Hearing setting the matter for hearing on October 21, 1997, upon Dalkon Shield Claimants or counsel for Dalkon Shield Claimants whose claims remained left to be resolved in arbitration under § E.5(a) of the Claims Resolution Facility ("CRF") or litigation under § E.5(b) of the CRF. The Trust's Notice advised all interested parties that, pursuant to Local Bankruptcy Rule 109(H)(3)(b), all objections to the Motion were due no later than October 14, 1997.

The Court received ten timely-filed objections to the Trust's Motion. One of them, filed on behalf of claimant Joyce Ward (Docket No. 30090) was withdrawn by the movant on October 20, 1997, the day before the hearing (Docket No. 30110). An eleventh objection, presented by Katherine Kerby of the law firm of Gholson, Hicks & Nichols on behalf of Dalkon Shield Claimant Shirley Wilbanks, was not filed with the Clerk until October 28, 1997 (Docket No. 30115), seven days after the hearing, and thus was untimely.

The Trust's Motion came on for hearing before this Court as scheduled at 2:00 p.m. ET on October 21, 1997. The Court heard argument from counsel for the Trust and received into evidence eight exhibits offered by the Trust. The Court also heard arguments from James F. Szaller, Kirk McQuiddy, and Anthony J. Nemo as counsel to various Dalkon Shield claimants, and from Lynn Gold, an unrepresented Dalkon Shield claimant. After consideration of the evidence and arguments of the parties, the Court determines that the Trust's Motion should be granted, with certain modifications.

### A. The Trust's Motion.

On June 26, 1991, this Court entered its Administrative Order No. 1 to set certain parameters for cases as they began to move through Arbitration and Litigation under § E.5(a) and § E.5(b) of the CRF. That Order was affirmed on appeal over numerous objections. *In re A.H. Robins Co.*, Case No. 85–01307–R, Docket No. 11500 (E.D. Va. *nunc pro tunc* June 26, 1991), *affirmed*, 42 F.3d 870 (4th Cir.1994). The Trust's Motion for Administrative Order No. 2, invoking the same jurisdiction of this Court that led to Administrative Order No. 1, asked for certain deadlines and other relief as the Trust is now nearing the completion of all arbitration and litigation proceedings on Dalkon Shield Claims.

The Trust's Motion asked the Court to enter as Administrative Order No. 2 an Order that would:

(1) **Scope of Order:** provide that the Order will be binding upon all persons holding Dalkon Shield Personal Injury Claims in arbitration under § E.5(a) of the CRF or in litigation under CRF § E.5(b) of the CRF and their attorneys, if any, and the Trust and its attorneys.

(2) **Trial Deadline:** require that the trials on the merits of all Dalkon Shield Claims in litigation be concluded, or commenced, on or before July 31, 1998.

(3) **Arbitration Deadline:** require that the hearings on the merits of all Dalkon Shield Claims in arbitration be concluded on or before October 30, 1998.

(4) **Disallowance for Failure to Meet Deadlines:** provide for the disallowance of the Dalkon Shield Claims of all plaintiffs who miss these deadlines.

(5) **Automatic Certification for Arbitration:** provide that any plaintiff who, after the date of the Order, alters his or her election from litigation to arbitration, as allowed by the Trust, shall be considered certified by the Court to proceed to arbitration as of the date of

the Trust's execution of the plaintiff's Election and Arbitration Agreement, in accordance with paragraph 2 of Amended Administrative Order No. 1 (Docket No. 11500), without the necessity for an Application for Certification or a Certification Order for such claimant for arbitration.

(6) *Closing the Document Depository:* modify paragraph 4 of this Court's Amended Administrative Order No. 1 to permit the Trust to close the Document Depository established under that paragraph and dispose of the documents in the Depository as deemed appropriate.

The Trust submitted that it was attempting to conclude all Dalkon Shield Claims and wind up its affairs so it might make its final pro rata distribution to eligible claimants under § G.14 of the CRF and then close. The Trust urged that the relief requested in its Motion was necessary to assist it in achieving those goals.

**B. The *Objections to the Trust's Motion.***

The nine objections to the Trust's Motion before the Court raised various arguments, which can be summarized as:

(1) a challenge to this Court's jurisdiction to enter deadlines for arbitrations and trials and to disallow claims for failing to meet them, based upon this Court's previous rulings that distinguish between matters that are day-to-day operations of the Trust and not subject to judicial review, and matters that are elevated above the realm of day-to-day operations that are reviewable by the Court, and upon the contention that this Court lacks the power under the Plan to disallow a Dalkon Shield Claim;

(2) the suggestion that there is no reason to attempt to conclude the Trust's operations on any sort of accelerated schedule;

(3) the contention that the Trust needs to conclude its mission by settling cases through negotiations, or by being deprived of certain defenses or positions in the cases; and

(4) the argument that setting a deadline for the trial of cases would impermissibly infringe upon the right of claimants to a jury trial under the Seventh Amendment to the United States Constitution.

The Court will address each of these objections in turn.

**C. *Decision.***

**1. *The Court's Jurisdiction.***

■ In § 8.05(d) of the Plan, this Court retained the express jurisdiction to enter orders in aid of the Plan and CRF. Section 8.05 also provides that this Court's retained jurisdiction did not include jurisdiction over or the authority to monitor the "day-to-day operations" of the Trust.

On many occasions when asked by claimants to overturn a decision or policy of the Trust, this Court has acknowledged this limitation on its retained jurisdiction over Trust activities. Several of these rulings involved deadlines set by the Trust to move claims through the CRF process before they reached arbitration or trial. *See In re A.H. Robins Co. (Evans v. Dalkon Shield Claimants Trust),* 213 B.R. 809 (E.D.Va.1997) (May 1, 1996 deadline on Option 3 offer); *In re A.H. Robins Co. (Dunbar v. Dalkon Shield Claimants Trust),* 209 B.R. 364 (E.D.Va.1997) (July 1, 1991 Option election deadline); *In re A.H. Robins Co. (Tucker v. Dalkon Shield Claimants Trust),* 204 B.R. 192 (E.D.Va.1996) (October 1, 1996 deadline to elect among ADR, arbitration or trial); *In re A.H. Robins Co. (Rothbard v. Dalkon Shield Claimants Trust),* 197 B.R. 509 (E.D.Va.1996) (June 30, 1995 Late Claims material deadline); *In re A.H. Robins Co. (Hamilton v. Dalkon Shield Claimants Trust),* 197 B.R. 505 (E.D.Va.1995) (August 1, 1994 claims materials deadline for Timely Claims); *In re A.H. Robins Co. (Shukis v. Dalkon Shield Claimants Trust),* 175 B.R. 204 (Bankr.E.D.Va.1994) (power to disallow stalled claims even if a claimant has previously been offered compensation by the Trust); *In re A.H. Robins Co. (Almalich v. Dalkon Shield Claimants Trust),* 197 B.R. 485 (E.D.Va.1994) (August 1, 1994 claims materials deadline for Timely Claims); *In re A.H.*

Robins Co. (*Mantush v. Dalkon Shield Claimants Trust*), 197 B.R. 493 (E.D.Va. 1994) (July 1 1991 Option election deadline).

Those decisions defined the scope of this Court's judicial review of actions by the Trustees. The role of this Court in that situation is to "check Claimants Trust actions that are outside its authority, not to second-guess actions within its authority." *In re A.H. Robins Co. (Besag v. Dalkon Shield Claimants Trust)*, 197 B.R. 590, 596 (E.D.Va. 1994). The Court will not review or alter policies or decisions by the Trustees that are within the confines of day-to-day Trust operations. Accordingly, "as a prerequisite to obtaining relief from a decision committed to the discretion of the Trust, the movant must show facts or issues that elevate the matter above the level of ordinary operations." *Mantush*, 197 B.R. at 494; *see also In re A.H. Robins Co. (Hamilton v. Dalkon Shield Claimants Trust)*, 197 B.R. 505 (E.D.Va. 1995); *Almalich, supra.*

■ The dichotomy between day-to-day operations and judicially reviewable Trustee decisions concerns the scope of this Court's power under § 8.05 to overturn a Trust action. It does not act as a limit on this Court's otherwise retained jurisdiction to enter Orders to aid in implementing the Plan when called upon to do so by the Trust itself. Here, the Trust has filed a Motion asking the Court to set deadlines for the conclusion of arbitration hearings and for the commencement of trials, urging that the deadlines will facilitate the completion of all claims under the Plan and CRF. The Court need not determine whether an Order requested by the Trust should not be entered because it pertains to a "day-to-day operation of the Trust" which the Trust itself could handle. The Court thus has retained jurisdiction to enter the Order the Trust requests on such a matter, if the Court concludes that the relief requested would facilitate implementation of the Plan and CRF.

■ Further, even if the day-to-day restriction in § 8.05 were to apply in this situation, the Court finds that the arbitration and trial deadlines sought by the Trust rise above the level of day-to-day operations. Like the final June 30, 1994 Bar Date for the assertion of Late Claims reviewed by the Court in *In re A.H. Robins Co. (Bennett v. Dalkon Shield Claimants Trust)*, 204 B.R. 194 (E.D.Va.1996); *In re A.H. Robins Co. (Warren v. Dalkon Shield Claimants Trust)*, 197 B.R. 503 (E.D.Va.1995); *In re A.H. Robins Co. (Allen v. Dalkon Shield Claimants Trust)*, 197 B.R. 501 (E.D.Va.1995); and *In re A.H. Robins Co. (Smith v. Dalkon Shield Claimants Trust)*, 197 B.R. 495 (E.D.Va. 1995), these arbitration and trial deadlines are milestones that signal crucial steps to winding up the Trust's affairs, making them a matter for judicial review.

■ One objection also challenges the power of this Court to disallow the claims of persons who do not meet deadlines imposed by any Order entered by this Court, citing language in § 8.05(g) of the CRF. Under that section, the Court retained power to "allow, disallow, estimate, liquidate or determine any Claim (excluding Dalkon Shield Claims) against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date."

Section 8.05(g) does not restrict the power of this Court to disallow Dalkon Shield Claims against the Trust for failing to comply with the Plan, the CRF, deadlines or requirements set by the Trust, or deadlines or requirements set by this Court. It was designed to allow the Court to allow or disallow Claims against the Debtor—Robins—other than the personal injury claims. The section concerned claims against Robins, not against the Trust. It carved out the Dalkon Shield Claims against Robins, as those claims were transferred to the Trust and their handling were prescribed elsewhere in the Plan and CRF. This Court retained the power to disallow Dalkon Shield Personal Injury Claims against the Trust.

## 2. *The Trust Should Finish Sooner, Rather Than Later.*

■ The Court further concludes that entry of the Order the Trust requests will facilitate in the implementation of the Plan and CRF. The Trust began its initial operations in 1988 and was fully funded when the Plan was consummated on December 15, 1989. The evidence submitted by the Trust

at the October 21 hearing showed that as of October 20, 1997, the Trust had concluded a total of 190,981 claims by voluntary agreement under Options 1, 2 and 3 and had paid those claimants a total of $1,492,550,867 in settlement amounts. (Trust Ex. 6.) Another 5,204 claims had been resolved through the Trust's Alternative Dispute Resolution program where the referees awarded the claimants who proved their cases a total of $40,-425,287. (Trust Ex. 7.) Thirty-eight cases have been finished in arbitration and another fifty-three cases concluded in litigation. (Id.) This has left the Trust facing twenty-three open cases in arbitration and sixty-one in litigation. (Trust Exs. 1–5.) Among the litigation cases, thirty-one already have trial dates before the requested July 31, 1998 deadline, while twenty-three do not. (*Id.*) The Court finds that imposition of deadlines for the conclusion of all arbitration hearings and at least the commencement of trials will cause both the plaintiffs and the Trust to focus their attention on their cases, prepare them for final hearing, and then have them tried. The existence of the deadlines will aid both parties in seeking hearing dates from arbitrators and trial settings from judges presiding over the cases.

Nor are the deadlines the Trust requests oppressive or unattainable. Many of the cases affected have been pending for some time. For example, one of the three cases in litigation brought by the law firm of Ness, Motley, Loadholt, Richardson & Poole, one of the objecting parties, was certified by this Court to proceed to litigation on May 5, 1995, some two and a half years ago. (Trust Ex. 1, Case No. 18.) Thirty-one of the open litigation cases already have trial dates before the proposed July 31, 1998 deadline. That means that trial dates have to be found for only twenty-three litigation cases. Of the fifteen arbitration cases awaiting to be heard on the merits, seven have hearings set before the requested October 30, 1998 deadline, meaning that hearing dates have to be assigned to only eight arbitration cases between now and a year from now, October 30, 1998.

The Trust is desirous of concluding its claims so that it may calculate and pay its final pro rata distribution to eligible claimants under § G.14 of the CRF. The Court would like to attain that goal as well. Any step that will facilitate progress towards that goal, yet remain faithful to the Plan and CRF, seems prudent and advisable. This Court will not allow a fraction of a percent of the total population of Dalkon Shield claimants to force the Trust to remain open for an indefinite period of time, continuing to incur administrative expenses and holding the final pro rata distribution hostage to these claimants' desire to litigate their cases indefinitely. Speed and efficiency have been aspirations in the CRF since the beginning of the Trust. The arbitration and trial deadlines sought by the Trust are reasonable and necessary to the successful conclusion of the Trust's operations.

To that end, the deadlines the Court today is setting are directed at the parties to these Dalkon Shield cases—the plaintiffs and the Trust—rather than to the individual arbitrators and trial judges. The purpose of the Order is not to overburden the calendars of the arbitrators or to attempt to control or aggravate the docket conditions of trial judges who deal on a daily basis with allocating their resources and energies to the fair adjudication of the many cases before them. Instead, the Order is a forceful announcement by this Court that it will not tolerate delay or inattention to these remaining cases from the plaintiffs and their attorneys any more than it would tolerate either from the Trust. The deadlines will engender immediate and affirmative action by the parties to ready the cases for trial and seek dates for their disposition. Throughout this bankruptcy, this Court has enjoyed the cooperation and diligence of the courts across the country in the many steps necessary to implement the massive undertaking needed to achieve the global peace sought when the Robins Plan was first affirmed in 1988. With deep appreciation for that past assistance, the Court also is confident that this cooperative judicial effort will continue until this task is finished.

### 3. *The Court Will Not Order the Trust to Negotiate Claims or Surrender its Defenses.*

██ Several of the objecting parties have urged the Court to impose not deadlines for

the cases but, instead, as their preferred method of concluding claims, dictate restrictions upon the Trust's ability to defend the cases. The Court will not do so.

The Trust has long had a policy, borne out of a sense of fairness to all claimants and the method by which claims were evaluated under the CRF, precluding the negotiation of claims values to settle claims. This Court previously has endorsed this policy. The Trust will not begin negotiating claim values at this late stage in its life. Further, the writers of the CRF designed arbitration and litigation to place the Trust and plaintiffs on a level playing field in each, with the only tilt in favor of plaintiffs remaining in arbitration the restriction in § E.5(a) and § G.12 of the CRF that the Trust is not to contest product defect in arbitration. The Trust is free to assert all other defenses and strategies in arbitration and trial. Whether to agree to or contest consolidation of cases and whether and when to waive defenses or stipulate to various issues are matters of trial strategy within the discretion of the Trustees. This Court will not accept the invitation by several objecting parties to strip the Trust of any such defenses or positions in arbitration or trial.

### 4. *Protection of the Right to Jury Trial.*

■ Several of the objecting parties predict that they will not be able to begin their trials by July 31, 1998. Only one attorney questioned his ability to finish his one arbitration case by October 30, 1998, saying it is on appeal and the court of appeals could order a new arbitration hearing. Those doubting the attainability of the July 31, 1998 trial deadline say they need to obtain expert witnesses, may have an appeal and a possible retrial, blame the Trust for past delay in cases, fear the possibility of illness of witnesses, counsel, or judges that requires the postponement of a trial beyond the July 31, 1998 deadline, or question the scope of the opinion of the Court of Appeals for the Fourth Circuit in *In re A.H. Robins Co. (Reichel v. Dalkon Shield Claimants Trust),* 109 F.3d 965 (4th Cir.1997), regarding the presumption of causation in Alternative Dispute Resolution. They see the deadline and the threat of disallowance for not meeting it

as an impermissible restriction on their Seventh Amendment right to jury trial. Ms. Gold, for example, argued she would not have time to conclude her trial by July 31, 1998. Her lawsuit has been pending since June 25, 1982. (Trust Ex. 1, Case No. 5.)

The Court is concerned about unfairly precluding a plaintiff from a jury trial. All these hypothetical problems can be addressed by the Court's inclusion in the Administrative Order No. 2 of an express provision allowing relief for good cause, a power which this Court retains in all instances even without such an express direction. This Court will safeguard each plaintiff's right to a jury trial. The potential difficulty in meeting a deadline is not a reason not to set it. Any plaintiff who, through no fault of her own, cannot begin her trial by July 31, 1998, can move this Court for an extension of the deadline to stave off disallowance. If the plaintiff demonstrates that she has diligently attempted to begin her trial by that time and circumstances beyond her control have prevented it, this Court will likely grant some extension of the deadline to fit those circumstances. The same procedure will be available to the Trust. The Court cannot prejudge each and every one of those cases. They will be addressed as needed on a case-by-case basis according to the circumstances of each if and when the problem arises.

### 5. *Closing the Document Depository.*

As to the closing of the Document depository maintained by the Trust pursuant to paragraph 4 of Amended Administrative Order No. 1, the Court received only one objection. Ms. Gold, the party who appeared *pro se* at the hearing, stated that she opposed closing the Document Depository, but gave no reason why.

The Depository has been visited by plaintiffs only fifteen times since it was created in 1990. All discovery in Dalkon Shield cases in arbitration and trial should be concluded by the date the Trust requests for closing of the Depository, April 1, 1998. The Court thus finds that it will facilitate the termination of the Trust if the Trust may begin disposition of the documents in the Depository at that time.

An appropriate Order shall issue.

## ADMINISTRATIVE ORDER ·NO. 2

On October 21, 1997, there came on for hearing before the Court the Motion by the Dalkon Shield Claimants Trust ("Trust") for Administrative Order No. 2, its Memorandum in support of that Motion, and the objections filed to such Motion. Upon consideration of these materials and the evidence and arguments before the Court, and for the reasons stated in the Memorandum of the Court filed with this Order, and deeming it just and proper so to do to aid in the implementation of the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Co., including the Claims Resolution Facility ("CRF"), it is hereby ORDERED, ADJUDGED, and DECREED, pursuant to this Court's retained jurisdiction under § 8.05 of the Plan, as follows:

1. *Scope of Order.* This Order is binding upon all persons holding Dalkon Shield Personal Injury Claims ("Claims") in arbitration under § E.5(a) of the CRF ("Arbitration") or in litigation under CRF § E.5(b) of the CRF ("Litigation"), and their attorneys, if any, and the Trust and its attorneys.

2. *Trial Deadline.* The trials on the merits of all Claims in Litigation shall be concluded, or commenced, on or before July 31, 1998.

3. *Arbitration Deadline.* The hearings on the merits of all Claims in Arbitration shall be concluded on or before October 30, 1998.

4. *Disallowance for Failure to Meet Deadlines.* The Claims of all plaintiffs in Litigation whose trials are not concluded or commenced on or before the July 31, 1998 Trial Deadline set by paragraph 2 of this Order, and the Claims of all plaintiffs in Arbitration whose hearings on the merits are not concluded on or before the October 30, 1998 Arbitration Deadline set by paragraph 3 of this Order, shall be disallowed as of those respective dates, without further notice or order of this Court, and those plaintiffs shall be permanently barred from any recovery relating to the Dalkon Shield.

5. *Automatic Certification for Arbitration.* Any plaintiff who, after the date of this Order, alters his or her election from Litigation to Arbitration as allowed by the Trust shall be considered certified by this Court to proceed to Arbitration as of the date of the Trust's execution of the plaintiff's Election and Arbitration Agreement, in accordance with paragraph 2 of Amended Administrative Order No. 1 (Docket No. 11500), without the necessity for an Application for Certification or a Certification Order for such claimant for Arbitration.

6. *Closing the Document Depository.* Paragraph 4 of this Court's Amended Administrative Order No. 1 (Docket No. 11500) is hereby modified to permit the Trust to close the Document Depository established under that paragraph and dispose of the documents in the Depository as deemed appropriate.

7. *Relief for Good Cause.* Any Dalkon Shield claimant and the Trust may obtain relief from paragraphs 2, 3 and 4 of this Order upon motion to this Court and upon a showing by the movant that it is unable to comply with the Trial Deadline or the Arbitration Deadline in a specific case because of circumstances beyond the reasonable control of the movant.

8. *Service of this Order.* The Trust is directed to serve a copy of this Order by first-class mail upon each of the plaintiffs or the lawyers identified in Exhibit F attached to the Trust's Motion for Administrative Order No. 2.