### In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.

### Employer's Tax Identification No. 54–0486348.

**Christa D. DECKER, Naomi Downing, Linda M. Kirby–Howze, Janice I. Jones, Hattie Lingham, Ida Scott Marshall, Bobbie J. Meyer, Karen Grove–Seekins, Daviejean Stevens, Ivory Stevens, Terrie Walker, and Adel Williams, Movants,**

v.

### DALKON SHIELD CLAIMANTS TRUST, Respondent.

### Bankruptcy No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

March 4, 1998.

---

18. *See supra* note 1.

Christa D. Decker, Commack, NY, Pro se.

Linda Howze–Kirby, Atlanta, GA, Pro se.

Janice I. Jones, Nelsonville, OH, Pro se.

Hattie Lingham, Atlantic City, NJ, Pro se.

Ida Scott Marshall, University Heights, OH, Pro se.

Bobby J. Meyer, Jacksonville, FL, Pro se.

Karen Seekins–Grove, Minneapolis, MN, Pro se.

Daviejean Stevens, Cleveland, OH, Pro se.

Ivory Stevens, Cleveland, OH, Pro se.

Terrie Walker, Ceres, CA, Pro se.

Adel Williams, Glenview, IL, Pro se.

Theodore I. Brenner, Brenner, Dohnal, Evans & Yoffy, Richmond, VA, for Naomi Downing.

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

Melody G. Foster, Dalkon Shield Claimants Trust, Richmond, VA, On Briefs.

### MEMORANDUM

MERHIGE, District Judge.

The Court is attempting to wind up the operations of the Dalkon Shield Claimants Trust (the "Trust") to permit the Trust to make the final pro rata distribution to eligible claimants under § G.14 of the Claims Resolution Facility ("CRF") and then close. *See In re A.H. Robins Co. (In re Administrative Order No. 2)*, 215 B.R. 112 (E.D.Va. 1997). To achieve those goals, all matters pending before this Court relating to the Trust must be concluded. This Memorandum addresses requests for reinstatement from twelve claimants whose Dalkon Shield Claims were disallowed by this Court in an Order entered July 20, 1987 (Docket No. 3300), for failing to return either of two Court-ordered questionnaires necessary to perfect a Dalkon Shield Claim to be processed by the Trust. For the reasons stated in this Memorandum, the Court will DENY each of these twelve Motions.

## I.

### A. *Previous Rulings By This Court*

Since the Trust's funding in December 1989, this Court has ruled upon thirteen Motions To Reinstate Claims disallowed by the July 20, 1987 Order. *See In re A.H. Robins Co. (Miller v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 30046 (E.D.Va. Aug. 7, 1997); *In re A.H. Robins Co. (Padilla v. Dalkon Shield Claimants Trust)*, 209 B.R. 362 (E.D.Va.1997); *In re A.H. Robins Co. (Wagner v. Dalkon Shield Claimants Trust)*, 208 B.R. 858 (E.D.Va.1997); *In re A.H. Robins Co. (Fox v. Dalkon Shield Claimants Trust)*, 208 B.R. 860 (E.D.Va.1997); *In re A.H. Robins Co. (Bauer v. Dalkon Shield Claimants Trust)*, 208 B.R. 856 (E.D.Va.1997); *In re A.H..Robins Co. (Casey v. Dalkon Shield Claimants Trust)*, 215 B.R. 344 (E.D.Va.1997); *In re A.H. Robins Co. (Porter v. Dalkon Shield Claimants Trust)*, 197 B.R. 613 (E.D.Va. 1996); *In re A.H. Robins Co. (Starnes v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 17083 (E.D.Va. Feb. 22, 1994); *In re A.H. Robins Co. (Louis v. Dalkon Shield Claimants Trust)*, 197 B.R. 488 (E.D.Va.1994); *In re A.H. Robins Co. (Gorka v. Dalkon Shield Claimants Trust)*, Docket No. 15782 (E.D.Va. Sept. 29, 1993); *In re A.H. Robins Co. (Steinbeck v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 14714 (E.D.Va. March 24, 1993); *In re A.H. Robins Co., Inc. (Robison v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 12426 (E.D.Va. May 13, 1992); *In re A.H. Robins Co. (Miller v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 12427 (E.D.Va. May 13, 1992). The request for reinstatement was granted in only one case—*Starnes*.

### B. *The Events Leading To The Disallowance Of Movants' Claims*

In *Porter*, the Court described the series of Orders entered by this Court in the Robins bankruptcy case requiring claimants to meet certain deadlines to present a claim for damages relating to the Dalkon Shield. In an Order entered November 25, 1985 (Docket No. 349), the Court set April 30, 1986 as the bar date for the filing of timely claims

against Robins. The Order directed an international notice campaign to advise all potential claimants of the bar date and the two-step process for registering and then perfecting a claim against Robins. A claimant could register a claim by mailing a simple postcard or letter to the Clerk. The Order directed the Clerk to send each person who did so a questionnaire ("Q1") eliciting further information on the claimant. Domestic claimants were required to return those questionnaires to the Court by June 30, 1986, while claimants outside the United States were given until July 30, 1986 to complete this second step. The questionnaire itself warned of these return deadlines.

Over 130,000 persons who registered postcard claims with the Clerk by the April 30, 1986 bar date failed to return the Court-ordered Q1 form. Robins asked the Court to disallow all those claims. The Court determined to offer those persons another opportunity to preserve their claims. In a May 5, 1987 Order (Docket No. 2933), the Court directed the Clerk to mail a second questionnaire ("Q2") to all claimants who had not returned the Q1 form. This Q2 form warned all those claimants that they were required to complete and return the form to the Clerk no later than July 15, 1987, or their claim would be disallowed.

In an Order entered on July 20, 1987 (Docket No. 3330), the Court disallowed the claims of approximately 106,800 persons who had not returned the Q2 form by the July 15, 1987 deadline. The Clerk mailed a copy of that Order Of Disallowance and a Notice Of Disallowed Claim to each of the affected claimants, along with a form giving them until September 11, 1987 to object to their disallowance. The Notice advised these claimants that they could appear at a hearing on September 21, 1987, to seek reinstatement of their claim, or could explain their grounds for reinstatement in writing.

Approximately 4,900 of these claimants submitted written requests to have their claims reinstated. Fewer than 200 of them requested a hearing on their Motions. After testimony at September 21 and October 8, 1987 hearings, the Court ordered reinstatement of ten claims.

On September 23, 1987, the Court appointed William C. White as a special master to review the written requests for reinstatement. The Special Master examined 3,601 forms and on October 20, 1987, filed a Report with the Court (Docket No. 3992), recommending reinstatement of 462 claims and that the other 3,139 claims remain disallowed. The Court entered another Order setting a hearing on December 22, 1987, on the Special Master's Report. Fewer than 300 claimants objected to the Special Master's recommendation. In a series of Orders entered on February 12, 1988 (Docket Nos. 4547 through 4580), the Court denied certain requests for reinstatement and granted others. The Court's refusal to reinstate their claims prompted 113 claimants to appeal and resulted in the ruling by the Court of Appeals for the Fourth Circuit in *In re A.H. Robins Co. (Wiltz)*, 862 F.2d 1092 (4th Cir. 1988), where the court approved of this Court's disallowance procedures.

### C. The Availability Of Rule 60(b) Relief And The Pending Motions

In *Maressa v. A.H. Robins Co.*, 839 F.2d 220 (4th Cir.1988), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988), the court of appeals suggested that claimants aggrieved by the disallowance of their claims in the July 20, 1987 Order could still petition for relief under Fed.R.Civ.P. 60(b), which provides six grounds on which a party may seek relief from a judgment or order entered by a court. The thirteen rulings of this Court cited above in this opinion stemmed from letters or Motions filed by such claimants seeking such Rule 60(b) relief.

The following requests from *pro se* claimants whose letters are treated as Motions For Relief Under Rule 60(b), remain pending in this Court's docket:

| | Movant | DS Number | Date Motion Filed | Docket Number |
|---|---|---|---|---|
| 1. | Christa D. Decker | DS210777 | 9/26/90 | 9338 |
| 2. | Naomi Downing | DS40823 | 10/31/89 | 6722 |
| 3. | Linda Howze–Kirby | DS320291 | 6/29/89 | 6545 |
| 4. | Janice I. Jones | DS43496 | 9/6/89 | 6644 |
| 5. | Hattie Lingham | DS304309 | 1/30/90 | 6802 |
| 6. | Ida Scott Marshall | DS107357 | 8/2/90 | 7093 |
| 7. | Bobbie J. Meyer | DS177033 | 1/18/90 | 6831 |
| 8. | Daviejean Stevens | DS48875 | 9/6/89 | 6650 |
| 9. | Karen Seekins–Grove | DS162018 | 11/8/90 | 10685 |
| 10. | Ivory Stevens | DS52171 | 5/18/90 | 6650 |
| 11. | Terrie Walker | DS135082 | 5/18/90 | 7024 |
| 12. | Adel Williams | DS130215 | 7/1/91 | 1509 |

These Motions are the last of the Rule 60(b) Motions concerning the July 20, 1987 disallowance. None of these twelve claimants returned either Q1 or Q2 to the Court. None of them has pursued his or her Motion by setting it for hearing or otherwise bringing it to the attention of the Court from among the over 30,000 pleadings in the vast Robins docket. Under Local Bankruptcy Rule 9013–1(L) and Fed.R.Civ.P. 78, the Court may now rule upon each Motion without further proceedings.

## II.

### A. *Each Of The Motions Was Untimely Filed*

Allegations that a claimant was unaware of the deadline that led to the disallowance of her claim or for some other reason was unable to comply with the deadline constitute a request for relief from the disallowance under Rule 60(b)(1), which permits relief from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect." *See In re A.H. Robins Co. (Louis v. Dalkon Shield Claimants Trust)*, 197 B.R. 488 (E.D.Va.1994). Rule 60(b) requires that motions for relief under subsection (1) must be filed no later than one year after entry of the judgment or order of which the movant complains.

On July 20, 1987, the Court disallowed the claims of each of the present Movants. The earliest of the Motions To Reinstate from these claimants was filed on June 29, 1989 (Ms. Howze–Kirby), nearly two years after the disallowance. The latest came on July 1, 1991 (Ms. Williams), almost four years after the July 20, 1987 Order.

None were filed within a year of the disallowance Order. As a consequence, each of the twelve Motions will be denied as untimely.

### B. *No Movant Has Shown Excusable Neglect*

Because each Motion was untimely, the Court need not address the merits of any of them. The lack of inquiry by these Movants or any of their representatives over the years suggests that many or all of them are no longer concerned with their ability to pursue a Dalkon Shield Claim against the Trust. Nonetheless, in the interest of completeness and to avoid any impression that their long-pending Motions have been denied on what to a layperson may seem to be a legal technicality, the Court observes further that none of the Movants set out circumstances that would qualify as excusable neglect within the meaning of Rule 60(b)(1).

#### 1. *The Pioneer Investment Decision*

The Supreme Court held in *Pioneer Investment Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), that a party's failure to meet a deadline because of inattention, inadvertence, or negligence constitutes "neglect" within the meaning of Bankruptcy Rule 9006(b)(1). This holding applies to other rules in which the term "excusable neglect" appears, including Rule 60(b)(1). A person seeking Rule 60(b) relief bears the burden of showing that his or her neglect was "excusable." That "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the par-

ty's omission." *Pioneer Investment,* 507 U.S. at 395, 113 S.Ct. at 1498. A court making this determination is to consider these factors:

(1) the danger of prejudice to the other party;

(2) the length of the delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the movant; and

(4) whether the movant acted in good faith.

*Id.* Applying the *Pioneer Investment* holding to the provision in Fed. R.App. P. 4(a)(5) that allows a district court to extend the time to appeal for excusable neglect, the Court of Appeals for the Fourth Circuit in *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 534 (4th Cir.1996), noted that " 'excusable neglect' is not easily demonstrated, nor was it intended to be." Quoting from the advisory committee notes to former Fed. R.Civ.P. 73, from which Fed. R.App. P. 4(a) was derived, the court advised that a district court should find excusable neglect "only in the 'extraordinary cases where an injustice would otherwise result.' " *Id.*

### 2. The Present Motions

The explanations given by the Movants in the twelve Motions now before the Court include the following:

(1) No reason given (Jones and Walker).

(2) The assertion that the claimant believed she was injured by the Dalkon Shield (Decker).

(3) The assertion that the claimant returned all the forms sent to her by the Court (Seekins–Grove; Downing; and Marshall).

(4) The assertion that the claimant never received any forms or questionnaires (Lingham; Meyer; I. Stevens; D. Stevens; and Williams).

(5) Illness (Howze–Kirby).

### 3. Application Of The Pioneer Investment Factors

■ The Court has no basis on which to question the good faith of any of the Movants. The danger of prejudice to the Trust, standing as the representative of and holder of the portion of the Robins bankruptcy estate established to satisfy Dalkon Shield personal injury claims, if claims were allowed to begin anew at this time, would be considerable. The Trust is nearing the end of its operations and is attempting to finish all claims and close. The claims evaluation processes have been completed and the teams of employees who performed those functions disbanded. The only claims remaining open at the Trust are those of persons who elected arbitration or trial to adjudicate their claims.

This risk of prejudice factor, however, is more properly viewed as of the time when the Movants filed their requests to have their claims reinstated, *i.e.,* from 1989 to 1991. If these Movants had properly brought these Motions on for hearing then, this analysis would have been made at that time, albeit without the benefit of the *Pioneer Investment* decision. At any rate, allowing any of the over 106,000 disallowed claimants to revive a claim upon the mere assertion of compliance with the deadline or nonreceipt of the necessary forms would have so diluted the excusable neglect requirement in 1989 to 1991 as to open the floodgates to additional claims to payment from the limited Trust fund. *See In re A.H. Robins Co. (Porter v. Dalkon Shield Claimants Trust),* 197 B.R. 613 (E.D.Va.1996). The prejudice to the Trust and to each of the 200,000 claimants who had complied with all the deadlines to perfect their claims would have been considerable then as well.

The excusable neglect determination being essentially an equitable one, the Court must also consider the nature of the proceedings that led to the disallowance of the Movants' claims. Each of these persons had the first opportunity to preserve their claims by completing and returning the Q1 form. When they did not, they were given a second chance to protect their claims by returning the Q2 form by a definite deadline. When they did not, they were given a third method to be heard by returning a form furnished to them by the Court and attending a hearing the Court had set for them. Those who followed that step were given a fourth vehicle for the protection of their claims—the chance to object to the Special Master's Report and

be heard by the Court on that objection. Before ever reaching the Rule 60(b) stage, the Movants had these four opportunities to avoid or undo the disallowance of their claims. The series of notices from the Court warning of the deadlines and of the consequences of not meeting them were quite clear. They did not suffer from the ambiguity afflicting the single notice at issue in the *Pioneer Investment* decision.

Moreover, even with their Dalkon Shield Claim disallowed, each of these Movants had yet another avenue to seek recovery through the Breland Settlement in the Breland Class Action. *See In re A.H. Robins Co. (Breland)*, 880 F.2d 709 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). In paragraph 4 of its April 13, 1988 Order preliminarily approving the Breland Settlement, the Court directed the Breland Class Counsel to mail on or before May 3, 1988, to every person who had submitted postcard claims to the Court by the April 30, 1986 bar date, personal notice of the Breland Settlement and detailed instructions on how to participate in it. That Notice was sent to each of the present Movants. Each of them was apprised that they could join in the Breland Settlement by returning a Statement Of Intent To Participate form (provided to them by the Court) by a deadline that was eventually extended through September 30, 1989.

The claims of all persons who timely submitted the forms to participate in the Breland Settlement, even if their claims had been disallowed by the Court beforehand, were processed according to the same CRF procedures available to persons with claims before the Trust. Indeed, the Breland Settlement was designed to benefit persons who did not have timely claims with the Trust, either because they missed the April 30, 1986 bar date, or they met that deadline but not those coming after it.

One of the present Movants (Downing), filed a claim with the Breland Insurance Trust and has been paid in full on that claim. As noted below, her Motion is denied as moot because she has received the same compensatory damages from the Breland Insurance Trust as she would have been paid by the Claimants Trust on a claim. None of the other instant Movants took advantage of the Breland opportunity. They thus missed the four procedures available to them to preserve their claims before the Claimants Trust and bypassed completely an equal opportunity to be paid by the Breland Insurance Trust. This tilts the equities of the situation decidedly against them.

The delay in the Movants' filing of their Rule 60(b) requests ranges from slightly under two years to almost four years. Given the elaborate safeguards the Court pursued to protect all claimants, the availability of the Breland Settlement, and the extensive publicity given the Robins case, its notice campaigns and the notice programs of the Breland Settlement, this delay was, in the Court's view, unreasonable. The purpose of the Q1 and Q2 process was to obtain sufficient data on the number of claimants and the types of their claims to permit the Court to estimate the funds necessary to process and pay all the thousands of Dalkon Shield Claims asserted in the Robins bankruptcy case. The Movants' delay extended through the November, 1987 estimation hearings, the voting on the Plan in March 1988, the approval by this Court of the Plan in July 1988, the ruling by the Court of Appeals for the Fourth Circuit confirming the Plan in June 1989, and, for most of the Movants, beyond the funding of the Trust on December 15, 1989, and as much as three years of the Trust's processing of claims. The judicial proceedings in the Robins case would have been adversely affected had claimants been able to avoid with ease the many deadlines set in the case.

Nor is the Court satisfied that any of the Movants have expressed adequate reasons under the law for the failure to act upon any of the many opportunities given them to preserve their Dalkon Shield Claims. Ms. Jones, Ms. Walker, and Ms. Decker have proffered no attempted excuse for missing the deadlines. The simple assertion by claimants that they think they had returned all the forms sent to them by the Court, with no proof of such compliance, and when the Court does not have them, is not excusable. In short, Ms. Seekins–Grove, Ms. Downing,

and Ms. Marshall do not offer grounds for relief.

Indeed, Ms. Marshall did object to the disallowance of her claim in 1987 and requested its reinstatement in September 1987. In his Report, the Special Master recommended that her claim remain disallowed. The Court sent Ms. Marshall notice of that recommendation and of the requirement that she object to the Special Master's Report by December 10, 1987. Ms. Marshall did not act before that deadline. In a February 12, 1988 Order (Docket No. 4577), the Court accepted the Special Master's recommendation that Ms. Marshall's claim remain disallowed. Her belated Rule 60(b) Motion to the Court on August 2, 1990, can be nothing more than a rehash of the attempted explanation given to the Special Master and should not be revisited now.

Nor can the allegations by Ms. Lingham, Ms. Meyer, I. Stevens, D. Stevens, and Ms. Williams that they never received any of the questionnaires from the Court constitute excusable neglect within the meaning of Rule 60(b)(1). The Court's mailing of the warnings and materials to the addresses provided by these claimants constituted sufficient notice to them of the relevant deadlines. *See In re A.H. Robins Co. (Bauer v. Dalkon Shield Claimants Trust)*, 208 B.R. 856 (E.D.Va.1997); *In re A.H. Robins Co. (Porter v. Dalkon Shield Claimants Trust)*, 197 B.R. 613 (E.D.Va.1996); *In re A.H. Robins Co. (Louis v. Dalkon Shield Claimants Trust)*, 197 B.R. 488 (E.D.Va.1994). The Court cannot eliminate the deadline upon the mere allegation that not one of the many forms sent was ever received by the Movants.

That leaves Ms. Howze–Kirby's Motion. She states that she was unable to meet any of the deadlines because of "illness." Though her letter refers to medical records,

none were attached to the letter received by the Court. She submitted no proof of the nature of her illness or its duration. She has not established, as did the claimant in *In re A.H. Robins Co. (Starnes v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 17083 (E.D.Va. Feb. 22, 1994), a life-threatening illness and hospitalization, the duration of which corresponded with the delay between the disallowance Order and the filing of her request for reinstatement. The Court concludes that she too has failed to show excusable neglect.[1]

None of the Movants has carried the burden of showing excusable neglect. If their Motions were timely, they would be denied on this basis.

### C. Ms. Downing's Motion Is Moot

█ In its Response to Ms. Downing's Motion (Docket No. 30073), the Trust reported that Ms. Downing filed a claim with the Breland Insurance Trust, elected to resolve her claim through Alternative Dispute Resolution, and was awarded compensation for her injuries by the referee who presided over her hearing. She has been paid in full for her compensatory damages as found by the referee in a program in which she agreed that the referee's decision would be final and binding on her claim. This renders moot her request that her disallowed Dalkon Shield Claim be reinstated and her Motion will be denied on that ground as well.

### III.

The disallowance of a claim is, of course, a serious consequence. For that reason, the Court in 1986 and 1987 afforded all claimants multiple opportunities to preserve their claims. The Breland Settlement provided a second chance for full recovery. The Movants missed all those chances. They then waited two to four years to ask for relief

---

1. The *Pioneer Investment* decision suggests that a claim that ill health prevented a party from acting before a deadline, where the party is not to blame for any of the delay, comes within Rule 60(b)(6), which allows a Court to reopen a judgment for "any other reason justifying relief from the operation of the judgment," rather than Rule 60(b)(1). *Id.*, 507 U.S. at 393, 113 S.Ct. at 1497. To obtain relief under subsection (6), a party

must show "extraordinary circumstances" showing that the party is faultless in the delay. *Id.* Ms. Howze–Kirby makes no such showing in her letter. Further, Rule 60(b)(6) motions must be made within a "reasonable time." The Court finds that her Motion, filed nearly two years after the disallowance Order, was untimely even under that criterion.

from this Court. Under these circumstances, the law, the equities, and the needs of the Trust and the universe of all Dalkon Shield claimants dictate that their Motions should be denied.