**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**Cynthia COPPERFIELD, Movant,**

**v.**

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

**No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

May 15, 1998.

---

Cynthia Copperfield, Hollywood, CA, Pro se.

Melody G. Foster, Richmond, VA, for Respondent.

### MEMORANDUM

MERHIGE, District Judge.

█ This matter is before the Court on the motion of Movant Cynthia Copperfield ("Ms. Copperfield") for relief from this Court's November 30, 1995 Order setting a deadline by which Ms. Copperfield had to file suit against the Dalkon Shield Claimants Trust (the "Trust").[1] For the reasons which follow, the Court will DENY Ms. Copperfield's motion.

### I.

After completing the claim resolution process, Ms. Copperfield elected to resolve her Dalkon Shield Claim through litigation as provided in Section E.5(b) of the Claims Resolution Facility ("CRF"). Pursuant to its Amended Administrative Order No. 1, the

---

1. Ms. Copperfield wrote to the Court asking for compensation on her Dalkon Shield Claim which was disallowed for failure to comply with this Court's November 30, 1995 Order. Her letter was docketed on August 29, 1996, as a Motion For Relief from that Order. The Court notes that

Ms. Copperfield appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

Court certified Ms. Copperfield to proceed to trial on her claim on October 20, 1995.

By Order entered November 30, 1995, this Court set a deadline of April 1, 1996, for Ms. Copperfield and all other claimants certified to proceed with litigation to commence or recommence litigation against the Trust (Docket No. 28871). The Order notified claimants that if they did not commence litigation or "otherwise resolve their claims" by April 1, 1996, their claims would be disallowed automatically and without further Order of the Court. A copy of the Order was sent to Ms. Copperfield at the address on record with the Trust. Because Ms. Copperfield did not commence litigation against the Trust by April 1, 1996, her claim was disallowed by the November 30, 1995 Order.

Five months after the deadline, Ms. Copperfield filed the instant Rule 60(b) Motion seeking relief from the November 30, 1995 Order. She provides no reasons in her Motion or Reply for not beginning litigation against the Trust by the April 1, 1996 deadline. She merely "object(s)" and asks that payment be made to her on her claim.

## II.

"Allegations that a claimant was unaware of the deadline that led to the disallowance of her claim or for some other reason was unable to comply with the deadline constitute a request for relief from the disallowance under Rule 60(b)(1), which permits relief from a judgment or order for 'mistake, inadvertence, surprise or excusable neglect.'" *In re A.H. Robins Co., Inc. (Decker, et al v. Dalkon Shield Claimants Trust)*, 219 B.R. 153 (E.D.Va.1998). The United States Supreme Court held in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), that a party's failure to meet a deadline because of inattention, inadvertence, or negligence is "neglect" within the meaning of Bankruptcy Rule 9006(b)(1). This holding applies to other rules in which the term "excusable neglect" appears, including Rule 60(b)(1).

A person seeking Rule 60(b) relief bears the burden of showing that her neglect was "excusable." That "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Investment*, 507 U.S. at 395, 113 S.Ct. at 1498. A court making this determination is to consider the following factors:

(1) the danger of prejudice to the other party;

(2) the length of the delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the movant; and

(4) whether the movant acted in good faith.

*Id.*

Court of Appeals for the Fourth Circuit in *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir.1996), noted that " 'excusable neglect' is not easily demonstrated, nor was it intended to be." Quoting from the advisory committee notes to former Fed.R.Civ.P. 73, from which Fed.R.App.P. 4(a) was derived, the court advised that a district court should find "excusable neglect" only "in the 'extraordinary cases where an injustice would otherwise result.'" *Id.*

## III.

Applying *Pioneer Investment*, the Court determines that Ms. Copperfield's neglect is not excusable. The danger of prejudice to the Trust if Ms. Copperfield were allowed to commence litigation now would be considerable. The Trust is nearing the end of its operations and is attempting to finish all claims and close. After setting a deadline by which all claimants must commence or recommence litigation, this Court has since entered Administrative Order No. 2 to require that all trials begin by July 30, 1998. If Ms. Copperfield were given a reprieve to begin a lawsuit now, it would be difficult, if not impossible, for discovery to be completed and a trial commenced by that time. With only a few dozen cases left to be tried or arbitrated before the final pro rata can be distributed and the Trust's mission accomplished, the impact of allowing a lawsuit to start anew is substantial.

Ms. Copperfield's delay in seeking relief also weighs heavily against her. She waited over nine months after entry of this Court's November 30, 1995 Order and over five months after the April 1, 1996 deadline passed to seek relief from the Order and reinstatement of her claim in this Court. A delay of a few weeks, much less several months, at this point in the Trust's existence, is too extreme. As the Trust nears its completion, it becomes imperative that those aggrieved by its processes move quickly to seek relief, lest the Trust's goal of closing in 1999 be thwarted by claimants who chose to ignore deadlines that most others were able to meet.

Moreover, Ms. Copperfield has not expressed any, much less adequate, reasons under the law for her failure to commence litigation against the Trust by the deadline this Court gave her. Her mere assertion that this deadline was somehow unfair or "illegal" without any factual support hardly qualifies as "excusable neglect". Finally, the Court has no basis on which to determine Ms. Copperfield's good faith. Therefore, the Court has not considered it in weighing the *Pioneer Investment* factors.

█ The Trust in its Response indicates that Ms. Copperfield may have changed residences at some point without notifying the Trust. Thus, posits the Trust, Ms. Copperfield may not have actually received the Order telling her about the deadline to initiate legal proceedings or the Trust's later generous and gratuitous reminder of the deadline and an opportunity for Ms. Copperfield to accept her offer before the deadline. The Trust's mailing of the Order to the address provided by Ms. Copperfield, however, constituted sufficient notice to her of the deadline. *See In re A.H. Robins Co., Inc. (Decker, et al. v. Dalkon Shield Claimants Trust),* 219 B.R. 153 (E.D.Va.1998); *In re A.H. Robins Co., Inc. (Bauer v. Dalkon Shield Claimants Trust),* 208 B.R. 856 (E.D.Va.1997); *In re A.H. Robins Co., Inc. (Porter v. Dalkon Shield Claimants Trust),* 197 B.R. 613 (E.D.Va.1996), *aff'd* (4th Cir.1997); *In re A.H. Robins Co., Inc. (Porter v. Dalkon*

*Shield Claimants Trust),* 197 B.R. 613 (E.D.Va.1996), *aff'd* (4th Cir.1997).